**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

SCOTT LONG,                )
                           )
        Plaintiff,          )
                           )
vs.                        )   Case No. 13-2533-JAR-GLR
                           )
AHMAD ARFAANIA,            )
                           )
        Defendant.          )
                           )

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Ahmad Arfaania's Motion to Set Aside Clerk's Entry of Default and Default Judgment (Doc. 16) for lack of personal jurisdiction, arguing Plaintiff failed to properly serve him and that he lacks the minimum contacts with Kansas required for this Court to exercise personal jurisdiction. Plaintiff responded that Defendant was sufficiently served. The Court has already ruled that the record demonstrates that Defendant was served; the Court took the remainder of Defendant's motion under advisement and set it for hearing. The Court heard evidence and argument on personal jurisdiction at a hearing on June 19, 2014. Having considered the briefs, and the evidence and argument presented at the hearing, the Court finds that it may exercise personal jurisdiction over this Defendant. However, the Court amends its prior judgment based on the evidence presented at the hearing, and reduces Plaintiff's actual damages award to $40,000.

**I.    Background**

The Complaint in this matter was filed on October 16, 2013, alleging a securities fraud claim under § 10(b) of The Securities Act of 1934 and state law fraud and conversion claims

against Defendant Ahmad Arfaania.[1]  A clerk's entry of default was filed on December 20, 2013, because proof of service showed Defendant had been personally served, and he had failed to answer by the deadline.  On February 19, 2014, Default Judgment was entered against Ahmad Arfaania in the amount of $60,000, based on the affidavit of Scott Long representing that the claim in this matter was for a sum certain.[2]  Plaintiff subsequently obtained writs of garnishment in an effort to satisfy the judgment in this matter.

After obtaining writs of garnishment (to which Defendant objects), Plaintiff sought and received permission to require that the garnishees deposit the garnished funds into the Court registry under Rule 67.  Plaintiff has submitted to the Court a proposed Order to Show Cause to Garnishee E*Trade Bank because the amount of funds deposited by E*Trade is less than what it provided in its Answer to the Garnishment.  Plaintiff also submitted a proposed Order to disburse the funds held in the Court registry in partial satisfaction of the judgment.  There is also a pending Motion for Judgment Debtor Exam (Doc. 15).

At the June 19, 2014 hearing, Plaintiff testified in person; Defendant submitted an affidavit but did not personally appear.  Defendant asserts that he did not learn of the clerk's entry of default or default judgment until his E*Trade brokerage account was garnished.  Defendant's affidavit asserts that he has never personally traveled to the state of Kansas, nor spoken with Plaintiff either in person or through any type of correspondence.  He further contends that he has never made any representation, omission, or solicitation to Plaintiff or anyone else about investments that he believed would be conveyed to anyone in Kansas.

---

[1] Doc. 1.

[2] Doc. 7; *see* Fed. R. Civ. P. 55(b)(1).

Plaintiff testified that he was approached by a third party, Michael Beckford, to invest in a pool of $250,000 that would promote penny stocks in order to increase their value. He understood that Beckford was an agent for Defendant Arfaania; Beckford told Plaintiff about Defendant's background and investment experience. Beckford guaranteed that Plaintiff would receive a 50% return on his investment. Beckford instructed Plaintiff to wire his share of the investment, $40,000, to Defendant's E*Trade account. Plaintiff acknowledges that he never communicated directly with Defendant. Plaintiff wired the money from his personal account at Bank of America, to Defendant's E*Trade account, which is evidenced by a receipt. That receipt includes Defendant's name and address. Plaintiff testified that he did not receive a return or refund on his $40,000 investment.

## II.     Discussion

### A.     Personal Jurisdiction

Under Rule 55(c), the Court may set aside a default judgment under Rule 60(b). Defendant argues that the default judgment in this case is void because the Court lacks personal jurisdiction. "'A default judgment in a civil case is void if there is no personal jurisdiction over the defendant.'"[3] And if the judgment is void under Rule 60(b)(4), then relief from judgment is mandatory and not discretionary.[4]

Defendant pointed out at the hearing that because this case alleges a Securities Act claim,

---

[3]Fed. R. Civ. P. 60(b)(4) (allowing the court to relieve a party from final judgment when "the judgment is void."); *Hukill v. Okla. Native Am. Domestic Violence Coalition*, 542 F.3d 794, 797 (10th Cir. 2008) (quoting *United States v. Bigford*, 271 F.3d 1247, 1251 (10th Cir. 2001)).

[4]*Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011).

3

it is subject to nationwide service of process.[5] An action under the Securities Act may be brought where "any act or transaction constituting the violation occurred" or "in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found."[6]

The Tenth Circuit has explained that when nationwide service of process is authorized by the governing federal statute, "it becomes the statutory basis for personal jurisdiction" provided that due process is satisfied.[7] In such a case, "the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant. In other words, the Fifth Amendment protects individual litigants against the burdens of litigation in an unduly inconvenient forum."[8]

To show that jurisdiction offends the Fifth Amendment, Defendant must establish that his liberty interests actually have been infringed.[9] In determining whether Defendant has met his burden "of establishing constitutionally significant inconvenience," the Court should consider:

> (1) the extent of the defendant's contacts with the place where the action was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery

---

[5] *See* 15 U.S.C. § 78aa.

[6] *Id.* § 78aa(a).

[7] *Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000) (quotations omitted); *see also Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1229 (10th Cir. 2006).

[8] *Peay*, 205 F.3d at 1212 (quotation omitted).

[9] *Id.*

>proceedings will take place outside the state of the defendant's residence or place of business; and (5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business.
>
>We emphasize that it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern. Certainly, in this age of instant communication, and modern transportation, the burdens of litigating in a distant forum have lessened.[10]

The Court incorporates its earlier finding that service was accomplished in this matter, based on the process server's affidavit. The Court therefore proceeds to the Fifth Amendment analysis. If Defendant makes a showing that litigation in Kansas is unduly inconvenient, "then jurisdiction will comport with due process only if the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant."[11] In making this determination,

>courts should examine the federal policies advanced by the statute, the relationship between nationwide service of process and the advancement of these policies, the connection between the exercise of jurisdiction in the chosen forum and the plaintiff's vindication of his federal right, and concerns of judicial efficiency and economy. Where . . . Congress has provided for nationwide service of process, courts should presume that nationwide personal jurisdiction is necessary to further congressional objectives.[12]

Defendant stated in his affidavits that he has had no contacts with Plaintiff in any way, nor has he personally traveled to Kansas. However, the record at the hearing conclusively

---

[10] *Id*. at 1212–13 (citations, quotations, and footnote omitted); *see Lone Star Steakhouse & Saloon, Inc.*, 169 F. Supp. 2d at 1200; *Talkin v. Deluxe Corp.*, No. 05-2305-CM, 2007 WL 1469643, at *2 (D. Kan. May 18, 2007).

[11] *Peay*, 205 F.3d at 1213 (quotation omitted).

[12] *Id.* (quoting *Republic of Pan. v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 948 (11th Cir. 1997)).

establishes that Defendant received and retained a wire transfer to an E*Trade account under his name from a resident of Kansas in the amount of $40,000. The record also shows that, whether authorized by him or not, Beckford solicited this investment on Defendant's behalf and directed the payment to Defendant by Plaintiff, a resident of Kansas. Plaintiff's damage occurred in Kansas and Kansas has a compelling interest in providing a remedy to its residents for securities fraud.[13]

The record further shows that while litigating this case in Kansas undoubtedly would be inconvenient to Defendant, the inconvenience does not rise to the level of constitutional concern. Plaintiff submitted the affidavit of his former counsel, John Weist, who attests that soon after he filed the Complaint in this matter, he received an email from Defendant's attorney, Rich Walton, of Marina del Rey, California, acknowledging this lawsuit against Defendant and stating that he represented Mr. Arfaania. Walton told Weist that he "may accept service on behalf of . . . Arfaania," but stated that he never got back to him. This is evidence that Defendant had access to counsel who could ably communicate with Plaintiff's counsel in Kansas about the matter prior to the answer deadline expiring, with little burden.

With respect to the judicial economy and discovery factors, this case is presented in the posture of a motion to set aside a default judgment after Defendant failed to answer, so these factors are neutral.

Finally, Defendant's alleged business activity is to solicit investments through himself and others that depend on wire transfers, such as the one made by Plaintiff in this matter. The

---

[13]*Wichita Fed. Sav. & Loan Ass'n v. Landmark Grp., Inc.*, 674 F. Supp. 321, 327 (D. Kan. 1987) ("Clearly, Kansas does have a strong interest in protecting its residents from fraudulent securities schemes which reach into this state.").

impact of this regulated activity naturally reaches outside the borders of his home state of California.

Under the facts asserted, Defendant simply cannot demonstrate that the exercise of jurisdiction "is so gravely difficult and inconvenient that [defendant is] at a severe disadvantage in comparison to [his] opponent."[14]  Having failed to show that the assertion of jurisdiction by this Court will infringe upon Defendant's liberty interest, the Court need not balance the federal interests at stake.  As a result, this Court has personal jurisdiction over Defendant.

### B.     Excusable Neglect

As previously stated, a motion to set aside a default judgment is brought under Fed. R. Civ. P. 60(b).  Having determined that the judgment was not void for lack of jurisdiction under Rule 60(b)(4), the Court turns to the requirements for otherwise setting aside default: "(1) the moving party's culpable conduct did not cause the default; (2) the moving party has a meritorious defense; and (3) the non-moving party will not be prejudiced by setting aside the judgment."[15]  Defendant argued at the hearing that under these factors, default judgment should be set aside.

Defendant's arguments at the hearing focused almost exclusively on the merits of Plaintiff's Securities Act claim in an effort to show a meritorious defense; he argued that there is a heightened pleading standard that was not met, which divests this Court of federal question jurisdiction.  Defendant argues that because he never spoke directly with Plaintiff, Plaintiff cannot maintain a claim against him for intentionally making a material misstatement of fact

---

[14]*Id.* (quotation omitted).

[15]*United States v. Timbers Preserve*, 999 F.2d 452, 454 (10th Cir. 1993), *abrogated on other grounds by Degen v. United States*, 517 U.S. 820, 825 (1996).

7

upon which Plaintiff relied to his detriment.  Plaintiff responds that Defendant acted through an agent, Beckford, and should be liable for his false representations.

But the Court begins with the first requirement for setting aside default: whether Defendant's culpable conduct caused the default.  A defendant's knowledge of a lawsuit and his post-service actions "play a role in measuring the willfulness of a defendant's default."[16]  When a party has actual or constructive notice of a lawsuit, yet completely fails to answer or otherwise communicate with the Court, defendant's failure is willful and "demonstrates complete disregard for the authority of the Court."[17]  The Court is unable to find on this record that Defendant's culpable conduct did not cause the default in this case.  While Defendant denies that he was personally served, as set forth in the Court's last Order on this issue, he does not deny having knowledge of the suit.  Indeed, Weist's affidavit establishes that Defendant had retained counsel who was aware of the complaint before the answer deadline expired, yet Defendant declined to file a timely answer or otherwise respond.  The record is devoid of any acceptable reason for this default.

The Court further finds that setting aside the default judgment would be prejudicial to Plaintiff, who undisputedly wired $40,000 to an account in Defendant's name from Kansas to California.  After initiating this litigation, Plaintiff's counsel communicated with Defendant's counsel; waited for a response back from Defendant's counsel about whether he would accept

---

[16]*Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 123 (5th Cir. 2008).

[17]*Crutcher v. Coleman*, 205 F.R.D. 581, 584 (D. Kan. 2001) (citing *Hunt v. Ford Motor Co.*, 65 F.3d 178, 1995 WL 523646, at *3 (10th Cir. 1995); *Ledbetter v. Kan. Dep't Soc. & Rehab. Servs.*, Case No. 99-2261-KHV, 2000 WL 206208 (D. Kan. 2000)); *Hunt v. Kling Motor Co.*, 841 F. Supp. 1098, 1106 (D. Kan. 1994) ("A defendant's conduct has been determined to be 'culpable' if he has received actual or constructive notice of the filing of the action and failed to answer.").

service on Defendant's behalf; upon no response, proceeded to effect personal service on Defendant in California; upon no answer, sought and obtained a clerk's entry of default and then waited two months before filing his motion for default judgment.  Given the time, consideration, and attorneys' fees expended in this matter, setting aside default would certainly prejudice Plaintiff.  Moreover, the garnished funds, including the funds from the same E*Trade account to which Plaintiff wired the subject funds in this case, have been deposited in this Court's registry.  Therefore, even if Defendant could establish a meritorious defense, he cannot meet the other two requirements to set aside default and the motion is therefore denied.

The Court does however reconsider its earlier determination that default judgment should be awarded in the amount of $60,000 in actual damages.  This amount represents Plaintiff's investment, plus the promised 50% return on his investment.  The Court finds that the evidence in this case shows actual damages of $40,000—the amount of the investment in this case, which was undisputedly wired to Defendant's E*Trade account and has not been returned to Plaintiff.  The Court amends the prior default judgment in this matter as to actual damages from $60,000 to $40,000.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Set Aside Clerk's Entry of Default and Default Judgment (Doc. 16) is **denied**.

**IT IS FURTHER ORDERED** that the previously entered Default Judgment shall be amended to award $40,000 in actual damages.  **Plaintiff shall submit a proposed amended default judgment in accordance with this Order by July 25, 2014.**

**IT IS SO ORDERED**.

Dated: July 14, 2014

S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE